In re **Estate of**
Antonio **Teregeyo** I and II,
Deceased.
Appeal No. 95-011
Civil Action Nos. 91-0298 & 91-0299P
July 25, 1997

Submitted on the Briefs July 16, 1997

Counsel for Appellant Administratrix Carmen Teregeyo Taitano: Antonio M. Atalig and Reynaldo O. Yana, Saipan.

Counsel for Appellee Antonia Tomo Tegita: Tred R. Eyerly, Saipan. (Law Offices of Vicente T. Salas)

BEFORE: TAYLOR, Chief Justice, VILLAGOMEZ, Justice, and MACK, Special Judge.

TAYLOR, Chief Justice:

¶1 ▇ Administratrix Carmen Teregeyo Taitano ("administratrix") appeals the Superior Court's decision dated March 14, 1995, finding that the Chalan Nuevo property belonged exclusively to the heirs of Antonio Teregeyo I ("Antonio I") and that Antonio I gave the property to his stepson Felix Tomo ("Felix") as a gift. We have jurisdiction pursuant to 1 CMC § 3102(a). We affirm.

### ISSUES AND STANDARD OF REVIEW

¶2  I.   Whether the Superior Court erred in finding that the properties belonged exclusively to Antonio I;

II.  Whether the Superior Court erred in finding that Antonio I orally conveyed the property to Felix as a gift; and

III. Whether the twenty-year statute of limitations barred the claims against the estates.

¶3 ▇ The Superior Court's findings of fact were made after an evidentiary hearing. Issues involving questions of fact are subject to the clearly erroneous standard of review. *Estate of Deleon Guerrero*, 3 N.M.I. 253, 263 n.8 (1992) relying upon *Pangelinan v. Unknown Heirs of Mangarero*, 1 N.M.I. 387, 393 (1990).

### FACTS AND PROCEDURAL BACKGROUND

90

¶4 This is a consolidated action filed by the administratrix in April of 1991 to probate the estates of two Carolinian brothers having the same name, Antonio I, the oldest, and Antonio Teregeyo II ("Antonio II"), the youngest. The only assets in the two estates involved the same two parcels of real property ("the property"). In the Petitions for Final Distribution filed in both probate proceedings, administratrix sought equal distribution of the property among the purported heirs of Antonio I and Antonio II.

¶5 Appellee Antonia Tomo Tegita and Maria Teregeyo Phillip (Antonio I's granddaughters), were not listed as heirs of either Antonio I or Antonio II in the proposed distribution. Appellee filed claims against both estates in the two pending probates arguing that the property should not be shared by the heirs of Antonio II because both parcels belonged exclusively to Antonio I. Furthermore, appellee claimed the property had been conveyed by Antonio I as a gift to Felix prior to his death.

¶6 The Superior Court's findings as to the history of the property may be summarized as follows: on August 26, 1953, the Trust Territory of the Pacific Islands (T.T. Government) issued Title Determination No. 571 which found that the Chalan Nuevo land was the property of the heirs of Antonio I, represented by Antonio II, as land trustee. On June 10, 1954, Antonio II, as land trustee, representing the heirs of Antonio I, exchanged with the T.T. Government the Chalan Nuevo property for real property later referred to as E.A. 166, located in As Perdido, Saipan, containing 9,512.0 square meters. On February 7, 1985, the CNMI Government issued a title determination finding that E.A. 166 was the property of "Antonio G. Teregeyo," but did not distinguish between Antonio I or Antonio II. Because the exchange of the Chalan Nuevo property for E.A. 166 was not an even exchange, the CNMI Government on June 28, 1985, conveyed Lot No. 019 D 39, located in Sugar King II, Saipan, and containing 654 square meters, to Antonio II as land trustee, for the heirs of Antonio I.[1]

¶7 After an evidentiary hearing, the Superior Court found that: (1) the property was not held according to Carolinian custom for the families of Antonio I and Antonio II, (2) Antonio I owned the property exclusively, and (3) Antonio I orally conveyed the land to Felix as a gift. administratrix timely appealed.

## ANALYSIS

### I. Whether the property belonged exclusively to Antonio I.

---

[1] *Estates of Antonio Teregeyo I and II.* Nos. 91-299 & 91-298 (N.M.I. Super. Ct. March 14, 1995) (Decision and Order at 4) (hereinafter "Decision and Order").

### a. The evidence presented

¶8 Administratrix contends the Superior Court erred in finding that the property belonged exclusively to Antonio I. Specifically, administratrix argues the "trial court improperly considered some evidence, failed to consider other evidence, and gave more weight to some evidence than others." Appellants' Opening Brief at 6-7. When faced with the identical argument, this Court has previously queried, "isn't this the essence of the trial court's function when it sits as the finder of fact?" *Estate of Rofag*, 2 N.M.I. 18, 30 (1991). Appellee, on the other hand, urges this Court not to disturb the findings which were made after hearing testimony over the course of two days and after weighing the credibility of the witnesses.

¶9 ■■■ We begin our analysis by emphasizing the high burden under the clearly erroneous standard that the administratrix must prove in order for this Court to disturb the lower court's findings. The assessment of evidence is a trial function. *Manglona v. Kaipat*, 3 N.M.I. 322, 336 (1992). It is not the province of the reviewing court to reweigh the evidence. *Cabrera v. Cabrera*, 3 N.M.I. 1, 7 (1992). Unless the Court is firmly convinced that a mistake was clearly committed below, it will not disturb the assessment of the trial court. *Manglona*, 3 N.M.I. at 336; *Estate of Deleon Guerrerro*, 3 N.M.I. at 263. An appellate court will not reverse a finding having evidentiary support, even though it might find the facts to be different if it performed the fact-finding function. *Estate of Rofag*, 2 N.M.I. at 31. The Court will not substitute its own findings for those of the trial court. *Pangelinan*, 1 N.M.I. at 393. The Court will accord particular weight to a trial judge's assessment of conflicting and ambiguous evidence. *Estate of Rofag*, 2 N.M.I. at 31. The appellant has the burden to clearly demonstrate error in the lower court's findings. *Pangelinan*, 1 N.M.I. at 393.

¶10 At trial, there was conflicting testimony as to how the Chalan Nuevo property was first acquired. Claimant Maria Phillips testified that her grandfather Antonio I received the property as part of a homestead program, presumably during the German administration. Decision and Order at 3. On the other hand, administratrix testified that a friend of Antonio I and Antonio II gave the brothers the property. *Id.* The Superior Court weighed the conflicting testimony and found that Antonio I received the Chalan Nuevo property as a homestead. *Id.* at 3, 10, 11. The administratrix further claims that the heirs of Antonio II used the Chalan Nuevo land in conjunction with the heirs of Antonio I for farming. Appellants' Brief at 9, 10. This submission directly contradicts the Superior Court's finding made after carefully weighing the credibility of the testimony presented, that only the members of Antonio I's family worked the land and that neither Antonio II nor his family ever farmed the property.

Decision and Order at 10 n.16; 11.

¶11 This Court is convinced that, utilizing its unique ability to observe the demeanor of the witnesses, the Superior Court weighed the conflicting testimony before rendering its decision. The record shows that the finding is supported by the evidence. Because these findings are supported by the evidence presented, we find no clear error.

### b. The Superior Court properly followed Carolinian Custom.

¶12 The administratrix cites *Estate of Kaipat* in arguing that the Superior Court failed to follow Carolinian custom. Appellant's Brief at 14, 15. In *Kaipat*, the Superior Court did not rely upon Carolinian custom in determining that one heir of the decedent was the sole owner of the property. *Estate of Kaipat*, 3 N.M.I. 494, 496-497 (1993). On appeal, this Court held that failure to look behind the documents to determine how one heir acquired the land was error. *Id.* at 498. The Superior Court was thus required to determine whether the individual heir held title for herself or on behalf of the clan. *Id.*

¶13 ■ Here, the Superior Court properly followed *Kaipat*'s directive by looking beyond the documentary title and examining whether the use of the land was consistent with Carolinian custom. Decision and Order at 8-11. The administratrix argued below that the documentary title demonstrated that the land was held according to Carolinian custom because Antonio II was acting as land trustee for his and Antonio I's heirs. Id. at 10. This argument was rejected because under Carolinian custom, the matrilineal system of collective ownership would require a female family member to hold the land title as trustee, and not a male such as Antonio II. *Id.* In looking beyond the documentary title, the Superior Court found that the use of the land was also inconsistent with Carolinian custom, since neither Antonio II nor his family used or controlled the land. *Id.* Accordingly, the Court found that the Chalan Nuevo property was not held as Carolinian family land, but was owned exclusively by Antonio I. *Id.* at 11. We find no clear error in this conclusion.

### II. Antonio I's conveyance to Felix was a gift.

¶14 ■ To establish that Antonio I gave Felix the Chalan Nuevo property as a gift, the Court must find that: (1) Antonio I intended to orally convey the land; (2) Antonio I delivered the land to Felix; and (3) Felix accepted the land. Decision and Order at 12, relying upon *Guerrero v. Guerrero*, 2 N.M.I. 61, 73 (1991) and *Cabrera v. Cabrera*, 3 N.M.I. at 5. The administratrix's contention that the gift requires an additional element, consideration, is without merit.

¶15 Through the testimony presented, the Superior Court found that each of these three factors were established. Decision and Order at 12-14. First, testimony by Appellee and Maria Phillip convinced the Superior Court that Antonio I intended to give Felix the land as a gift. *Id.* at 13. Second, although there was no evidence to show delivery of an actual deed, the Court found Felix's use of the land sufficient to demonstrate delivery. Id. at 13-14. Finally, Felix's actions in exclusively farming the land and the absence of any evidence to show he rejected the land was sufficient to establish acceptance of the conveyance from Antonio I. *Id.* at 14.

¶16 We find no clear error in the Superior Court's findings that Antonio I gave the Chalan Nuevo property to Felix as a gift. Id.

### III. The Statute of Limitations

¶17 Administratrix contends that the twenty year statute of limitations found in 7 CMC § 2502(a)(2) bars the claims made against the estate. In the reply brief, administratrix argues that 7 CMC § 2502 is more than just a statute of limitations, it is also a limitation on the court's power to hear a case. Administratrix asserts this is a case of first impression because the Court has never been asked to consider whether 7 CMC § 2502 can limit a court's subject matter jurisdiction. Appellee counters that this argument is meritless and should be disregarded. In addition, it was not raised below.

¶18 ■ Issues not raised at trial cannot be considered for the first time on appeal. *Santos v. Matsunaga*, 3 N.M.I. 221, 231 (1992), relying upon *Ada v. Sablan*, 1 N.M.I. 415, 426 n.12 (1990). Because administratrix did not raise the statute of limitations as an affirmative defense below and there is no basis for raising it on appeal for the first time, we decline to address this issue.

### CONCLUSION

¶19 Based upon the foregoing reasons, we hereby **AFFIRM** the Superior Court's findings.